**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALEXANDER W. NDAULA,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:20-cv-1160** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **CLINTON COUNTY** | : | |
| **CORRECTIONAL** | : | |
| **FACILITY,** *et al.,* | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

This matter is before the Court pursuant to Defendants' motions to dismiss (Doc. Nos. 19, 23) *pro se* Plaintiff Alexander W. Ndaula ("Plaintiff")'s amended complaint (Doc. No. 13).  Plaintiff has neither responded to the motions nor filed a motion seeking an extension of time to do so.[1]  Accordingly, because the time for filing responses has expired, the motions to dismiss are ripe for disposition.

**I.    BACKGROUND**

On July 10, 2020, Plaintiff, who was previously detained at the Clinton County Correctional Facility ("CCCF") by the Department of Homeland Security ("DHS") Immigration and Customs Enforcement ("ICE"), initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 and the

---

[1] Although Plaintiff is proceeding *pro se*, he has received permission to electronically file using the Cm/ECF system.  Given this, Plaintiff does not receive the benefit of any additional days past the date on which a deadline ends to account for mailing documents to the Court.

Americans with Disabilities Act ("ADA") against Defendants CCCF, Warden Angela Hoover ("Hoover"), Jason Kormanic ("Kormanic"), Well Path Care, and Medical Supervisor Jody Bainey ("Bainey").  (Doc. No. 1.)  Plaintiff also filed a motion for leave to proceed *in forma pauperis*.  (Doc. No. 6.)  In a Memorandum and Order dated August 7, 2020, the Court granted Plaintiff leave to proceed *in forma pauperis* and screened his complaint pursuant to the Prison Litigation Reform Act of 1995 ("PLRA").  (Doc. Nos. 7, 8.)  The Court dismissed Plaintiff's § 1983 against CCCF and his ADA claims against the individual Defendants and Well Path Care with prejudice and dismissed his § 1983 claims against the individual Defendants and Well Path Care without prejudice.  (Doc. No. 8.)  Plaintiff was granted leave to file an amended complaint within thirty (30) days and was advised that if he failed to do so, the above-captioned action would proceed only as to his ADA claim against CCCF.  (*Id.*)  Plaintiff was advised that if he filed an amended complaint "[i]t must be a pleading which stands by itself without reference to the original complaint or any other documents already filed."  (*Id.*)  He was also advised that the amended complaint would supersede the original complaint.  (*Id.*)

After receiving an extension of time (Doc. No. 10, 11), Plaintiff filed his amended complaint on October 12, 2020 (Doc. No. 13).  Despite the Court's August 7, 2020 Order, Plaintiff twice states that he is incorporating all statements made in his original complaint "as if stated herein."  (*Id.* ¶¶ 1, 13.)  The Court's August 7,

2

2020 Order explicitly told Plaintiff that he could not do so.  (Doc. No. 8.)  The Court, therefore, will not consider any statements made in the original complaint because the amended complaint is now the operative pleading.

In his amended complaint, Plaintiff states that he was in custody at CCCF between August 21, 2018, and December 17, 2019.  (Doc. No. 13 ¶ 3.)  On September 2, 2019, Plaintiff "slipped and fell from the second-floor staircase of a housing unit."  (*Id.* ¶ 14.)  The fall caused him to "rupture his right patellar tendon, tear a muscle in his left shoulder blade, and injure his back and neck."  (*Id.*)  Plaintiff was "denied pain medication prescribed for him at the local hospital."  (*Id.*)  Plaintiff alleges that CCCF "has no reliable medical transport system, lacks medical housing for the severely injured, and no handicap accessible cells, toilets, and showers."  (*ID.* ¶ 15.)  He maintains that his "medical appointments to off premises specialists were routinely delayed, his post operation therapy canceled on several occasions, and was denied any care for the shoulder, neck, and back injuries he also complained of."  (*Id.* ¶ 16.)  He claims that these actions "aggravated his injuries and extended his recovery process."  (*Id.*)  Plaintiff also suggests that he was denied hygiene from September 2, 2019 until December 17, 2019.  (*Id.* ¶ 20.)  Plaintiff states that he "cannot at this stage of these proceedings, and need not, provide any more factual detail in support of his allegations against [D]efendants that is already set forth."  (*Id.* ¶ 17.)

Based on the foregoing, Plaintiff alleges violations of his due process rights by failing to provide adequate medical care and based upon poor prison conditions. (*Id.* ¶¶ 19-20.)  He also asserts violations of Title II of the ADA because CCCF "lacked handicapped accessible cells, showers, and toilets."  (*Id.* ¶ 21.)  As relief, he seeks damages.  (*Id.* at 9.)

## II.    LEGAL STANDARD

### A.    Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Under *Twombly* and *Iqbal*, pleading requirements have shifted to a "more heightened form of pleading."  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  *Id.*  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B

Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d Ed. 2004)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (noting that when considering a motion to dismiss, courts may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading").

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## B.     Civil Rights Statute, 42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III.   DISCUSSION

### A.   Claims Under 42 U.S.C. § 1983

Plaintiff was an immigration detainee at the time of the events set forth above. As such, Plaintiff was entitled to heightened protection. *See Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979); *E.D. v. Sharkey*, 928 F.3d 299, 306-07 (3d Cir. 2019). Plaintiff's constitutional claims, therefore, are properly considered under the Due Process Clause of the Fifth and/or Fourteenth Amendments instead of the Eighth Amendment. *See Hubbard v. Taylor (Hubbard I)*, 399 F.3d 150, 158 (3d Cir. 2005).

#### 1.   Claims Against CCCF

As noted *supra*, the Court previously dismissed Plaintiff's § 1983 claims against CCCF with prejudice. The amended complaint, however, suggests that

Plaintiff is again alleging § 1983 claims against CCCF.  CCCF, however, is not a person subject to suit under § 1983.  *See Vazquez v. Dauphin Cty. Prison*, No. 1:19-cv-217, 2019 WL 2577381, at *3 (M.D. Pa. June 24, 2019).  Thus, the Court's dismissal of such claims will stand.

### 2.    Conditions of Confinement

To establish a Fourteenth Amendment violation, a prisoner must allege that the conditions of confinement amount to punishment.  *Bell*, 441 U.S. at 538.  That inquiry generally turns on whether the conditions have a purpose other than punishment and whether the conditions are excessive in relation to that purpose.  *See id.* at 538-39; *Hubbard I*, 399 F.3d at 158.  In making this assessment, a court should consider the totality of the circumstances.  *See Hubbard v. Taylor (Hubbard II)*, 538 F.3d 229, 235 (3d Cir. 2008); *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996).

In his amended complaint, Plaintiff vaguely alleges that "[d]uring the period of [his] injury, between September 2, 2019 and December 17, 2019, he was denied access to hygiene."  (Doc. No. 13 ¶ 20.)  The Court recognizes that hygiene falls with the "minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Plaintiff's amended complaint, however, fails to set forth facts suggesting how he was denied hygiene and that Defendants were personally involved in the alleged denial of hygiene.  Without more, the Court cannot discern that Plaintiff's vague suggestion that he was denied hygiene amounts to punishment.

8

Accordingly, the Court will grant Defendants' motion to dismiss with respect to Plaintiff's due process claim concerning conditions of confinement.

### 3.   Denial of Adequate Medical Care

The Third Circuit has held that the "deliberate indifference" standard employed when analyzing denial of medical care claims under the Eighth Amendment also applies to detainees under the Fifth and Fourteenth Amendments. *See Simmons v. City of Phila.*, 947 F.2d 1042, 1067 (3d Cir. 1991). In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment deliberate indifference claim, a claimant must demonstrate "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197. The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842)). Moreover, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.*

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious. A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Not every condition is a serious medical need; instead, the serous medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. *See id.* Moreover, because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. *See White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990); *see also Estelle v.*

*Gamble*, 429 U.S. 97, 106 (1976) ("medical malpractice does not become a constitutional violation merely because the victim is a prisoner").

Additionally, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, *see Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White*, 897 F.2d at 108-10.  Furthermore, it is well settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim.  *See Taylor v. Norris*, 36 F. App'x 228, 229 (8th Cir. 2002); *Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1024-25 (7th Cir. 1996); *Sherrer v. Stephens*, 50 F.3d 496, 497 (8th Cir. 1994); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); *see also Pearson v. Prison Health Servs.*, 850 F.3d 526, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

In his amended complaint, Plaintiff states that he "had serious medical needs that were obvious even to an untrained eye."  (Doc. No. 13 ¶ 19.)  He alleges that Defendants "denied him effective treatment as they delayed his appointment to the surgeon, his pain medication, routinely canceled his post operation therapy

appointments and merely placed him in an isolated cell.  They also totally ignored his injuries to the shoulder, neck, and back." (*Id.*)  Plaintiff's use of the collective word "they," however, "fails to adequately plead which specific Defendant engaged in the specific conduct alleged by Plaintiff." *Dudley v. SCI Camp Hill (Prison)*, No. 1:20-cv-523, 2020 WL 1891849, at 3 (M.D. Pa. Apr. 16, 2020 (citing *Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014)).  For that reason alone, Plaintiff's amended complaint fails to state a constitutional claim for denial of adequate medical care.

### a.    Defendants Hoover and Kormanic

Plaintiff names Defendants Hoover and Kormanic, the Warden and Assistant Warden of CCCF, due to their supervisory positions.  Plaintiff asserts that they are responsible for the "promulgation, implementation, and enforcement" of all CCCF policies as well as the employment, training, and supervision of employees at CCCF. (Doc. No. 13 ¶¶ 6-7.)  He maintains that Defendants Hoover and Kormanic are liable for failing to employ and train employees and failing to "promulgate, implement and eforce policies, procedures, protocols, customs and practices for the care of detainees." (*Id.* ¶ 8.)

As the Court previously told Plaintiff, for a § 1983 claim to survive a motion to dismiss, the plaintiff must sufficiently allege that the defendant was personally involved in the act or acts that the plaintiff claims violated his rights.  *See Rode v.*

*Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Solan v. Ranck*, 326 F. App'x 97, 100 (3d Cir. 2009). Therefore, supervisors cannot be liable under § 1983 on the traditional standard of *respondeat superior*. *See Santiago*, 629 F.3d at 128. Instead, there are two theories of supervisory liability that are applicable to § 1983 claims: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Once again, Plaintiff has pled no facts suggesting that Defendants Hoover and Kormanic participated or acquiesced in the alleged violations of his rights, and he has not identified any policy that allegedly caused the violations of his rights. *See McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009).

"Under Section 1983, a supervisory may be liable for [his or her] failure to train or supervise employees." *Whitfield v. City of Phila.*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008). A claim for liability based upon a failure to train involves four (4) elements: (1) that an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of this unreasonable risk; (3) the supervisor was

indifferent to the risk; and (4) the injury resulted from the policy or practice.  *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).  A supervisor may be held liable where a need for "more or different training . . . is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train . . . can fairly be said to represent official policy," and where that failure to train "actually causes injury," a supervisor may be held liable.  *City of Canton v. Ohio*, 489 U.S. 378, 390 (1989).  In addition,

> [i]n resolving the issue of [supervisory] liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.  That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program . . . .  Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training . . . .  Moreover, for liability to attach . . . the identified deficiency in [the] training program must be closely related to the ultimate injury.

*Id.* at 390-91.  In the instant case, Plaintiff has made only conclusory failure to train allegations.  The bare allegations, without further explanation, are insufficient to plausibly allege that Defendants Hoover and Kormanic failed to adequately train employees at CCCF.  Accordingly, Plaintiff has failed to state a plausible § 1983 claim for relief regarding the denial of medical care against Defendants Hoover and Kormanic.  *See Thompson v. Wetzel*, No. 20-cv-3550, 2020 WL 7397705, at *5 (E.D. Pa. Dec. 17, 2020) (concluding same regarding inmate-plaintiff's failure to train claims).

14

### b.     Claims Against Defendant Bainey

Plaintiff asserts that Defendant Bainey is a Registered Nurse at CCCF who is responsible for treating detainees, enforcing policies affecting their care, and the employment and training of all employees at CCCF providing such care.  (Doc. No. 13 ¶ 10.)  Plaintiff, however, fails to sufficiently allege that Defendant Bainey was personally involved in the alleged denial of adequate medical care.  *See Rode*, 845 F.2d at 1207.  Moreover, Defendant Bainey cannot be responsible for any acts of her subordinates pursuant to *respondeat superior*.  *See Santiago*, 629 F.3d at 128. Furthermore, under the standards set forth *supra*, Plaintiff fails to set forth plausible supervisory liability and failure to train claims against Defendant Bainey.  *See McTernan*, 564 F.3d at 658; *Thompson*, 2020 WL 7397705, at *5.  His § 1983 claims against Defendant Bainey, therefore, will be dismissed.[2]

---

[2] In support of dismissal, Defendant Bainey asserts that she is a non-medical administrator and, therefore, cannot be charged with the Eighth Amendment's requirement of a finding of deliberate indifference.  (Doc. No. 24 at 17-23.)  This Court has previously agreed with such a conclusion. *See, e.g.*, *DeShields v. Moclock*, No. 1:18-cv-1709, 2019 WL 4082674, at *4 (M.D. Pa. Aug. 29, 2019).  However, Defendant Bainey supports her argument with a verification attached to the brief in support.  (Doc. No. 24-2.)  The Court, however, cannot consider this verification without converting the motion to dismiss into one for summary judgment because it was not referred to by Plaintiff in his complaint.  *See Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 560 (3d Cir. 2002) (noting that documents attached to the motion to dismiss by a defendant are only considered part of the pleadings that can be considered on a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to the claim").  Because the Court has concluded that dismissal of Plaintiff's § 1983 claims against Defendant Bainey is appropriate on other grounds, the Court declines to convert the motion and does not dismiss the claims against Defendant Bainey on this basis.

### c.   Claims Against Defendant Well Path Care

Plaintiff has also named Well Path Care, the company that provides medical care at CCCF, as a Defendant in this matter.  He asserts that as the contracted medical provider for CCCF, Well Path Care "had ultimate responsibility for the medical care of all detainees" as well as for "the promulgation, implementation and enforcement of all of the medical policies, procedures, protocols, customs and practices pertinent to such care, and the employment, training and supervision of all employees" at CCCF providing such care.  (Doc. No. 13 ¶ 9.)  Plaintiff suggests that Well Path Care "directly participated in and [was] responsible for the neglect of [his] serious medical needs."  (*Id.* ¶ 11.)

Under § 1983, however, a private corporation contracted to provide healthcare for inmates cannot be held liable pursuant to *respondeat superior*; instead, a plaintiff must allege that the entity had a policy, practice, or custom that caused his or her injury.  *See Shade v. Stanish*, No. 1:19-cv-1429, 2020 WL 869748, at *7 (M.D. Pa. Feb. 21, 2020); *see also Carpenter v. Kloptoski*, No. 1:08-cv-2233, 2010 WL 891825, at *8 (M.D. Pa. Mar. 10, 2010) (concluding that a § 1983 claim against a private medical service solely on the basis that it was responsible for providing health care is subject to dismissal).  Once again, Plaintiff fails to allege any facts suggesting that the alleged deficiencies in his medical care were the result of specific policies, customs, or practices implemented by Well Path Care.  Moreover, to the

extent Plaintiff seeks to hold Well Path Care liable for failing to adequately train its employees, his bare allegations are insufficient to state such a claim.  Accordingly, Plaintiff's § 1983 claims against Well Path Care concerning the denial of adequate medical care are also subject to dismissal.

### d.      Claims Against Clinton County

Plaintiff's amended complaint adds Clinton County as a Defendant in this matter.  He suggests that Clinton County is liable for failing to employ and train qualified individuals to work at CCCF and by failing to "promulgate and enforce appropriate operating policies, procedures and protocols either formally or by custom and practice" to protect Plaintiff's constitutional rights.  (Doc. No. 13 ¶ 18.)

Defendant Clinton County is a municipality and, therefore, cannot be held liable for either its conduct or the conduct of employees in county agencies, such as CCCF, pursuant to *respondeat superior*.  *See Brickell v. Clinton Cty. Prison Bd.*, 658 F. Supp. 2d 621, 626-27 (M.D. Pa. 2009).  To successfully set forth a § 1983 claim against Clinton County, Plaintiff must raise a *Monell* claim alleging that the County is a governmental entity and thus a "person" under § 1983 and alleging that either a policy, or lack of policy, of the County led to the violation of his constitutional rights.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Under *Monell*, Clinton County "can be sued directly under § 1983 . . . [when] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation

or decision officially adopted and promulgated by [its] officers" or where the constitutional deprivations occurred pursuant to governmental custom. *Monell*, 436 U.S. at 690. "A plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).

Clinton County is a municipality subject to liability as a "person" under § 1983. *Mulholland v. Gov't Cty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013). Here, Plaintiff relies not on the affirmative implementation of a policy, but rather on the County's alleged failure to adequately train employees at CCCF and failure to promulgate policies to protect his constitutional rights. Beyond his conclusory allegations, Plaintiff "points to no prior incidents from which [the Court] might reasonably infer that the County and its governing officials had actual or constructive knowledge of the purported policy deficiencies upon which [his] § 1983 *Monell* claim is premised." *Ferguson v. Davy*, No. 4:17-cv-2136, 2019 WL 1009444, at *4 (M.D. Pa. Jan. 11, 2019), *Report and Recommendation adopted*, 2019 WL 1003609 (M.D. Pa. Feb. 28, 2019); *see also Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train . . . . Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program

that will cause violations of constitutional rights."). Moreover, Plaintiff's suggestion that the County's policies and customs were not appropriate is insufficient to state a claim because "policies are not deficient simply because they are not the best." *Ferguson*, 2019 WL 1009444, at *4; *see also Serafin v. City of Johnstown*, 53 F. App'x 211, 215 (3d Cir. 2002) ("The fact that the City's policy was not the most effective policy possible, however, does not, without more, create an unreasonable risk to detainees' safety or demonstrate the City's indifference to such a risk, and there is no 'more' here."). Plaintiff, therefore, has failed to state a § 1983 claim against Clinton County regarding the alleged denial of adequate medical care.

## B.     Claims Under the ADA

In order to establish a violation of Title II of the ADA, a plaintiff must allege that: "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *See Mutschler v. SCI Albion CHCA Health Care*, 445 Fed. App'x. 617, 621 (3d Cir. 2011) (citing 42 U.S.C. § 12132). This provision extends to inmates detained in a county jail. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (noting that "[s]tate prisons fall squarely within the statutory definition of 'public entity,' which includes 'any department, agency, special

purpose district, or other instrumentality of a State or States or local government'"
(quoting 42 U.S.C. § 12131(1)(B))).

Defendants Clinton County and CCCF assert that Plaintiff "is foreclosed from
bringing a § 1983 claim based upon alleged ADA violations." (Doc. No. 20 at 16.)[3]
Defendants, however, misread Plaintiff's amended complaint.  The Court has
construed Plaintiff's amended complaint to assert claims under both § 1983 and the
ADA.  In his amended complaint, Plaintiff alleges that CCCF and Clinton County
violated his rights under the ADA because CCCF "lacked handicapped accessible
cells, showers, and toilets." (Doc. No. 13 ¶ 21.)  In light of this allegation, the Court
concludes that Plaintiff has set forth a plausible ADA claim against CCCF and
Clinton County at this time.  *See Majewski v. Luzerne Cty.*, No. 3:05-cv-2396, 2007
WL 1074769, at *10-11 (M.D. Pa. Apr. 9, 2007) (allowing the plaintiff to proceed
with his ADA claims against Luzerne County and the Luzerne County Correctional
Facility).

### C.    Leave to Amend

Courts are cautioned that because of the liberal pleading standard, a plaintiff
should generally be granted leave to amend before dismissing a claim that is merely

---

[3] As noted *supra*, the Court previously dismissed Plaintiff's ADA claims against the individual
Defendants and Well Path Care with prejudice.  Plaintiff's amended complaint suggests that he is
now asserting his ADA claims against Clinton County and CCCF.

deficient. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.* The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002).

Based on the foregoing, it would be futile to permit Plaintiff leave to file a second amended complaint with respect to his § 1983 claims against Defendants. Plaintiff alleged no facts to support these claims, and "he has already had two chances to tell his story." *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019). Accordingly, "giving him further leave to amend would be futile." *Id.* The above-captioned case, therefore, will proceed only as to Plaintiff's ADA claim against Defendants CCCF and Clinton County.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the motion to dismiss (Doc. No. 19) filed by Defendants Clinton County, CCCF, Hoover, and Kormanic.  The motion will be granted with respect to Plaintiff's § 1983 claims against these Defendants and denied as to Plaintiff's ADA claim against Defendants Clinton County and CCCF.  The motion to dismiss (Doc. No. 23) filed by Defendants Well Path Care and Bainey will be granted in its entirety.  Plaintiff will not be permitted to file a second amended complaint, and the above-captioned action will proceed solely as to his ADA claim against Defendants Clinton County and CCCF.  An appropriate Order follows.

<u>s/ Sylvia H. Rambo</u>
United States District Judge

Dated: December 30, 2020